**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| **EVANSTON INSURANCE COMPANY,**<br><br>                   **Plaintiff,**<br><br>v.<br><br>**U. S. WASTE INDUSTRIES, INC.**<br><br>                   **Defendant.** | **CIVIL ACTION NO.** 3:10-1987-CMC |

**DECLARATORY JUDGMENT COMPLAINT**

NOW COMES, Plaintiff Evanston Insurance Company ("Evanston"), hereby complaining of Defendant U.S. Waste Industries, Inc. ("USW"), would respectfully show and allege unto the Court as follows:

**PARTIES AND JURISDICTION**

1.     Evanston is a corporation organized and existing under the laws of the State of Illinois with its principal place of business in Deerfield, Illinois.

2.     USW is a corporation organized and existing under the laws of the State of South Carolina with its principal place of business in Walterboro, South Carolina, and upon information and belief, USW conducts business in Lexington County, South Carolina.

3.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

4.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because this is a dispute between citizens of different states. Plaintiff is a citizen of Illinois and Defendant is a citizen of South Carolina. As such, Plaintiff and Defendant are completely diverse and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

\12635713.7

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim described herein occurred in Lexington County, South Carolina.

## FACTUAL ALLEGATIONS – JANUARY 5, 2010 INCIDENT

6.      Evanston is informed and believes that USW provides services in the environmental industry and describes itself as a "waste broker."

7.      Devro, Inc. manufactures and supplies collagen products used as flexible, edible casings in the food industry.

8.      Devro owns real property at 785 Old Swamp Road, Swansea, Lexington County, South Carolina (hereinafter the "Sandy Run Facility"), on which Devro maintains a manufacturing facility and multiple tanks for storage of fuel oil used in Devro's manufacturing processes.

9.      In late 2009 or early 2010, Devro contacted USW regarding demolition of an obsolete storage tank (the "Tank") at its Sandy Run Facility, including the removal of hydrocarbon sludge materials then-existing in the Tank.

10.     Upon information and belief Devro and USW entered into a contract in late 2009 or early 2010 (the "Devro Contract"), the terms of which contemplated that USW would demolish and remove the Tank including the hydrocarbon sludge material in the Tank.

11.     Upon information and belief, as a part of the Devro Contract or by way of a concurrent contract between Devro and USW, USW executed a hold-harmless agreement, which provided in pertinent part that USW would indemnify and hold harmless Devro for any claims, suits, damage to property, or loss of any nature resulting directly or indirectly from performance of the demolition work by USW or any of its subcontractors at the Sandy Run Facility.

\12635713.7

12. Upon information and belief, following execution of the Devro Contract, USW contacted Joe Sikes, doing business as Industrial Cleaning Service ("Sikes"), a South Carolina sole proprietorship, regarding the demolition work to be performed at the Sandy Run Facility.

13. Upon information and belief, USW entered into a contract with Sikes pursuant to which Sikes was to perform the demolition work at the Sandy Run Facility on behalf of USW, including demolition of the Tank.

14. Upon information and belief USW and Sikes began the demolition work at the Sandy Run Facility in late 2009 or early 2010.

15. On or about January 5, 2010, at approximately 5:00 p.m., Joe Sikes, a Sikes employee, and/or an agent of Sikes was performing demolition work on the Tank using a cutting torch and a chop saw.

16. Upon information and belief, at that same time molten slag or some other source of ignition from the equipment operated by Joe Sikes, a Sikes employee, and/or an agent of Sikes, caused a fire within the Tank.

17. Upon information and belief, the fire at the Sandy Run Facility on January 5, 2010 (the "Incident") caused damage to property owned by Devro.

18. Upon information and belief, Devro contends that the fire at the Sandy Run Facility on January 5, 2010 (the "Incident") caused other damages, including emergency cleanup costs, loss of revenue, and other business interruption.

19. Upon information and belief, Devro has made a claim for and seeks damages from USW for these cleanup costs, property damage, loss of revenue, and other business interruption costs.

3

\12635713.7

## FACTUAL ALLEGATIONS – THE EVANSTON POLICIES

20.     Evanston issued to USW a Commercial Lines Liability Policy, No. 09PK02012, with effective dates from August 31, 2009 through August 31, 2010 (hereinafter the "Primary Policy").  A copy of the Primary Policy is attached as "Exhibit A."

21.     Evanston issued to USW an excess policy, No. 09EFX00167, with effective dates from August 31, 2009 through August 31, 2010 (hereinafter the "Excess Policy").  A copy of the Excess Policy is attached as "Exhibit B."  The Primary Policy and the Excess Policy will be referred to collectively as the "Policies."

22.     Except for the limit of liability and other terms not relevant to this matter, the coverage provided by the Excess Policy is on the same terms as that provided in the Primary Policy.

23.     USW is an insured under the Policies.

24.     The Primary Policy includes multiple coverage parts, including without limitation a Commercial General Liability (hereinafter "CGL") coverage part, a Contractors Pollution Liability (hereinafter "CPL") coverage part, and a Professional Liability (hereinafter "PL") coverage part.

25.     The Primary Policy contains multiple endorsements and exclusions which modify and/or restrict the coverage provided under the CGL, CPL and PL policy sections.

26.     Because the Excess Policy follows the form of the Primary Policy, subject to its own terms and endorsements which are not relevant here, the same endorsements and exclusions which modify and/or restrict the coverage provided under the CGL, CPL and PL sections of the Primary Policy also affect coverage under the Excess Policy.

27. As to the CGL and CPL coverage parts, the Primary Policy contains a Designated Operations Coverage Endorsement (the "Designated Operations Endorsement") which states in relevant part:

### SCHEDULE

**Designated Operations: The loading and unloading and transportation of hazardous and non-hazardous waste and substance and performed by a third party on behalf of the insured.**

**This insurance applies only to "bodily injury" or "property damage" arising out of the "designated operations" shown in the schedule above.**

28. The Designated Operations Endorsement limits coverage under the CGL and CPL parts of the Policy to "bodily injury" and "property damage" arising from "[t]he loading and unloading and transportation of hazardous and non-hazardous waste and substance and performed by a third party on behalf of the insured."

29. The Primary Policy also contains a Designated Professional Services Endorsement applicable to the PL coverage part, which provides as follows:

### SCHEDULE

**Designated "Professional Services": Arranging for the transportation or site selection for the disposal or treatment of hazardous and non-hazardous waste and substance.**

**This insurance applies only to "claims" that result from the rendering of or failure to render the designated "professional services" shown in the schedule above.**

30. The Designated Professional Services Endorsement limits coverage under the PL section of the Primary Policy to claims resulting from the rendering or failure to render the enumerated "professional services," namely, "Arranging for the transportation or site selection for the disposal or treatment of hazardous and non-hazardous waste and substance."

5

\12635713.7

31. With respect to the CGL, CPL, and PL coverage parts in the Primary Policy, the Breach of Contract Exclusion Endorsement (the "Breach of Contract Exclusion") modifies the coverage provided by those parts by way of the following language:

> **This insurance does not apply to claims for breach of contract, whether express or oral, nor claims for breach of an implied in law or implied in fact contract, whether "bodily injury," "property damage," "advertising injury," "personal injury" or an "occurrence" is alleged.**
>
> **This exclusion also applies to any additional insureds under this policy.**
>
> **Furthermore, no obligation to defend will arise or be provided by the Company for such excluded claims.**

### FACTUAL ALLEGATIONS – THE APPLICATION FOR THE EVANSTON POLICIES

32. Prior to the inception of the Policies, USW completed a Contractors and Consultants Application (the "Application"). A copy of the Application is attached as Exhibit C.

33. Section E of the Application stated: "Please list your estimated receipts including subcontracted work for the next 12 months next to the appropriate category. List services not described below under "Other" (please be specific)…"

34. Question E. 4. asked USW to state its estimated receipts for 23 different categories of work, including but not limited to "Above Ground Storage Tank Installation," "Above Ground Storage Tank Removal," "Underground Storage Tank Installation and "Underground Storage Tank Removal." *See* Exhibit B, p. 2.

35. USW did not mark any of the categories under Question E. 4, thus representing that it would not engage in these types of work.

36. Question E. 5. asked USW to state its estimated receipts for 24 different categories of Consulting/Laboratory work. Two lines are also provided under the category "Other-Consulting/Laboratory," with space to describe the services. *See* Exhibit B, p. 2.

37. Only one line is marked under Question E. 5. USW wrote in "Waste Broker" and filled in "100%" in the line provided for receipts, representing that that this was the only service that it would provide to its clients.

38. Under Application Section F., Question 1. asks, "Please identify the services that are subcontracted." *See* Exhibit B, p. 3.

39. On the first line under Question F. 1., USW wrote, "N/A," representing that it did not enter into subcontracted services.

40. Four additional questions, F. 2. through F. 5., ask for additional information about subcontractors.

41. Adjacent to each question, F. 2. through F. 5., is marked the response, "N/A".

42. The Application includes the following warranty statement:

> The undersigned authorized officer of the applicant declares that the statements set forth herein are true. The undersigned authorized officer agrees that if the information supplied on the application changes between the date of the application and the effective date of the insurance, he/she (undersigned) will immediately notify the insurer of such changes, and the insurer may withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance. Signing of this application does not bind the applicant to the insurer to complete the insurance.

*See* Exhibit B., p. 4.

43. Donald E. Goldman, Chief Financial Officer of USW, signed the Application on July 17, 2009.

44. Policy condition IV. 6. provides:

6. Representations.

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

7

\12635713.7

     b. Those statements are based upon representations you made to us; and

     c. We have issued this policy in reliance upon your representations.

45. Despite the representations in the Application, Evanston is now informed and believes that USW holds itself out as performing a variety of other services in addition to waste brokering, including cleaning, removing, decontaminating or replacing above ground and underground storage tanks.

## FACTUAL ALLEGATIONS – DEVRO CLAIM

46. On or about January 6, 2010, USW notified Evanston of the Incident causing damage to Devro's real and personal property (the "Devro claim").

47. Devro wrote to USW on January 27, 2010, advising USW that Devro had suffered injuries to its operations and that Devro expected compensation.

48. USW demanded that Evanston investigate the claims asserted against USW by Devro.

49. In response to USW's demand, Evanston retained the law firm of Collins & Lacey, P.C. to investigate on behalf of USW the claims by Devro.

50. In response to USW's demands, Evanston also took additional steps to investigate the Incident, the damages caused by the Incident, and the Devro claim.

51. In the weeks following the Incident, USW performed certain clean-up activities at the Sandy Run Facility to minimize the environmental implications from the Incident and otherwise address damages resulting from the Incident.

52. USW demanded that Evanston indemnify it under the terms of the Primary Policy for the amounts it paid to complete the initial remedial work at the Sandy Run Facility.

53. In response to USW's request for indemnification Evanston paid USW the total sum of $73,320.81 on April 9, 2010.

54. On or about March 15, 2010, Devro communicated with USW and sought additional damages arising from the Incident. Specifically, Devro claimed that it experienced damage to other storage tanks at the Sandy Run Facility, and incurred additional remedial costs, and other purported business-related expenses arising from the Incident. Devro alleged that the total amount of these additional damages was $468,331.00.

55. USW has sought indemnification from Evanston for the additional damages sought by Devro.

56. Evanston has issued a reservation of rights letter reserving all of its rights under the Policies.

57. Under a full reservation of all of its rights under the Policies, Evanston is continuing to investigate the claims asserted by Devro against its insured, USW, arising from the Incident.

58. Under a full reservation of all of its rights under the Policies, Evanston has retained counsel on behalf of its insured to represent its interests in connection with the claims by Devro.

59. Upon information and belief, Devro has not filed suit or instituted other formal legal action against USW for damages arising from the Incident.

60. USW has not informed Evanston that Devro either has filed suit or instituted other formal legal action against USW for damages arising from the Incident.

61. Upon information and belief, Evanston has no present duty to defend a lawsuit against USW arising from the Incident.

62. Evanston files this action to seek declaratory relief regarding its obligations to defend or to indemnify USW for claims against it and damages sought by Devro arising from the Incident. Evanston also files this action to seek declaratory relief that its Policies are rescinded and void *ab initio* based on misrepresentations made by USW in its policy Application.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment – Designated Operations Endorsement)

63. Evanston incorporates the preceding allegations of this Complaint.

64. The Primary Policy defines "Designated Operations" which are covered by the CGL and CPL coverage parts as "The loading and unloading and transportation of hazardous and non-hazardous waste and substance and performed by a third party on behalf of the insured."

65. At the time of the Incident, USW, Sikes, their employees, agents, and/or subcontractors were performing demolition work on the Tank.

66. At the time of the Incident, USW, Sikes, their employees, agents, and/or subcontractors **were not** engaged in "Designated Operations" as that term is defined in the Designated Operations Endorsement of the Primary Policy.

67. Because the acts of USW and its agents in connection with work on the Tank fall outside of the Designated Operations Endorsement, Evanston has no obligation to defend, to indemnify or to provide coverage to USW under the CGL or CPL coverage parts of the Primary Policy for the claims against it and damages sought arising from the Incident.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment -- Designated Professional Services Endorsement)

68. Evanston incorporates the preceding allegations of this Complaint.

10

\12635713.7

69. The Primary Policy defines "Designated Professional Services" which are covered by the PL coverage part as: "Arranging for the transportation or site selection for the disposal or treatment of hazardous and non-hazardous waste and substance."

70. At the time of the Incident, USW, Sikes, their employees, agents, and/or subcontractors were performing demolition work on the Tank.

71. At the time of the Incident, USW, Sikes, their employees, agents, and/or subcontractors **were not** engaged in "Designated Professional Services" as that term is defined in the Designated Professional Services Endorsement in the Primary Policy.

72. Because the acts of USW and its agents in connection with work on the Tank fall outside of the Designated Professional Services Endorsement, Evanston has no obligation to defend, to indemnify or to provide coverage under the PL coverage part of the Primary Policy to USW for the claims against it and damages sought arising from the Incident.

### THIRD CAUSE OF ACTION
**(Declaratory Judgment – Breach of Contract Exclusion)**

73. Evanston incorporates the preceding allegations of this Complaint.

74. The Breach of Contract Exclusion in the Policy provides in relevant part that the insurance under the CGL, CPL, and PL coverage parts "does not apply to claims for breach of contract, whether express or oral, nor claims for breach of an implied in law or implied in fact contract, whether 'bodily injury,' 'property damage,' 'advertising injury,' 'personal injury,' or an 'occurrence' is alleged."

75. Upon information and belief, USW entered into the Devro Contract to perform demolition of the Tank.

76. Upon information and belief, as part of the Devro Contract or by way of a separate contract, USW executed an indemnification and hold harmless agreement on behalf of

Devro relative to damages which might result from the demolition work at the Sandy Run Facility.

77. Upon information and belief, USW and/or its subcontractor, Sikes, were in the course of performance of the contract for demolition of the Tank at the time of the Incident.

78. The damages sought by Devro against USW arise from USW's alleged breach of the contract to demolish the Tank and/or the USW – Devro hold harmless agreement.

79. Based on the Breach of Contract Exclusion, Evanston has no obligation to defend, to indemnify or to provide coverage under the Primary Policy to USW for the claims against it and damages sought arising from the Incident.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment of No Coverage under the Excess Policy)

80. Evanston incorporates the preceding allegations of this Complaint.

81. Because the acts of USW and its agents in connection with work on the Tank fall outside of the Designated Operations Endorsement, Evanston has no obligation to defend, to indemnify or to provide coverage to USW under the CGL or CPL coverage parts of the Primary Policy for the claims against it and damages sought arising from the Incident.

82. Because the acts of USW and its agents in connection with work on the Tank fall outside of the Designated Professional Services Endorsement, Evanston has no obligation to defend, to indemnify or to provide coverage under the PL coverage part of the Primary Policy to USW for the claims against it and damages sought arising from the Incident.

83. Based on the Breach of Contract Exclusion, Evanston has no obligation to defend, to indemnify or to provide coverage under the Primary Policy to USW for the claims against it and damages sought arising from the Incident.

\12635713.7

84. Except for the limit of liability and other terms not relevant to this matter, the coverage provided by the Excess Policy follows that provided in the Primary Policy.

85. Because the acts of USW and its agents in connection with work on the Tank fall outside of the Designated Operations Endorsement and the Designated Professional Services Endorsement of the Primary Policy, and falls within the Breach of Contract Exclusion under the Primary Policy, Evanston has no duty to defend or indemnify or to provide coverage to USW under the Excess Policy.

## FIFTH CAUSE OF ACTION
**(Declaratory Judgment Seeking Rescission of the Primary Policy Based on a Material Misrepresentation)**

86. Evanston incorporates the preceding allegations of this Complaint.

87. Prior to the inception of the Primary Policy, USW represented in its Application to Evanston that all its income would come from "waste broker" services.

88. The representations in the Application constitute a material misstatement and/or material omission of fact. Upon information and belief, USW anticipated at the time it completed the Application that it would earn receipts from a number of other activities in addition to waste broker services. Evanston is now informed and believes that USW holds itself out as performing a variety of other services in addition to waste brokering, including cleaning, removing, decontaminating or replacing above ground and underground storage tanks.

89. Prior to the inception of the Primary Policy, USW represented in its Application to Evanston that it did not subcontract any of its services.

90. The representations in the Application constitute material misstatements and/or material omissions of fact. Upon information and belief, USW subcontracted many of its services at the time of the Application and anticipated it would continue to do so.

91. At the time USW made its misrepresentations and/or omissions of fact, USW knew the statements to be false.

92. USW's misrepresentations and/or omissions statements were material to Evanston's classification, pricing and underwriting of the risk.

93. Evanston relied to its detriment upon USW's misrepresentations and/or omissions in classifying, pricing and underwriting the risk.

94. Upon information and belief, USW made the misrepresentations and/or omissions with intent to deceive Evanston.

95. Therefore, Evanston prays that this Court enter judgment declaring that the Primary Policy is void *ab initio* based on a material misrepresentation and/or omissions by USW in its Application for insurance.

96. Upon a ruling by the Court that the Primary Policy is void *ab initio*, Evanston will refund premiums paid by USW on the Primary Policy. Evanston is prepared to deposit the premiums with the Court until the resolution of this case and upon entry of an appropriate order under Fed. R. Civ. P. 67 and L.R. 67, Evanston will deposit the premium refund with the Clerk of Court until the resolution of this case.

### SIXTH CAUSE OF ACTION
**(Declaratory Judgment Seeking Rescission of the Excess Policy Based on a Material Misrepresentation)**

97. Evanston incorporates the preceding allegations of this Complaint.

98. Prior to the inception of the Excess Policy, USW represented in its Application to Evanston that all its income would come from "waste broker" services.

99. The representations in the Application constitute material misstatements and/or material omissions of fact. Upon information and belief, USW anticipated at the time it completed the Application that it would earn receipts from a number of other activities in

14

\12635713.7

addition to waste broker services. Evanston is now informed and believes that USW holds itself out as performing a variety of other services in addition to waste brokering, including cleaning, removing, decontaminating or replacing above ground and underground storage tanks.

100. Prior to the inception of the Excess Policy, USW represented in its Application to Evanston that it did not subcontract any of its services.

101. The representations in the Application constitute a material misstatement and/or material omission of fact. Upon information and belief, USW subcontracted many of its services at the time of the Application and anticipated it would continue to do so.

102. At the time USW made its misrepresentations and/or omissions of fact, USW knew the statements to be false.

103. USW's misrepresentations and/or omissions statements were material to Evanston's classification, pricing and underwriting of the risk.

104. Evanston relied to its detriment upon USW's misrepresentations and/or omissions in classifying, pricing and underwriting the risk.

105. Upon information and belief, USW made the misrepresentations and/or omissions with intent to deceive Evanston.

106. Therefore, Evanston prays that this Court enter judgment declaring that the Excess Policy is void *ab initio* based on a material misrepresentation and/or omissions by USW in its Application for insurance.

107. Evanston is prepared to refund all premiums paid by USW on the Excess Policy, and upon entry of an appropriate order under Fed. R. Civ. P. 67 and L.R. 67, Evanston will deposit the premium refund with the Clerk of Court until the resolution of this case.

\12635713.7

## SEVENTH CAUSE OF ACTION
### (Declaratory Judgment)

108.   Evanston incorporates the preceding allegations of this Complaint.

109.   A genuine controversy exists between Evanston and USW as to the coverage provided under the Policies, and the determination of coverage is a proper subject for adjudication pursuant to 28 U.S.C. § 2201.

110.   For the reasons set forth above and for such other reasons determined by the Court in this action, Evanston is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that it has no duty to defend, indemnify or otherwise provide coverage to USW with respect to Devro's Claims.

111.   For the above stated reasons, Evanston prays this Court enter judgment declaring that Devro's Claims are not covered under the terms of the Policies, and grant Evanston such other and further relief, as the Court may deem appropriate.

WHEREFORE, Evanston prays that the Court:

1.   Take jurisdiction of this matter pursuant to Rule 57 of the Federal Rules of Civil Procedure and the Declaratory Judgment Act, 28 U.S.C. § 2201;

2.   Enter a judgment declaring that Evanston has no obligation to defend, to indemnify or to provide liability insurance coverage to USW under Policy No. 09PK02012 for any claims arising from the Incident;

3.   Enter a judgment declaring that Evanston has no obligation to defend, to indemnify or to provide liability insurance coverage to USW under Policy No. 09EFX00167 for any claims arising from the Incident;

\12635713.7

3.	Enter judgment declaring that Policy No. 09PK02012, issued by Evanston to USW, is void *ab initio* based on material misrepresentations and/or omissions by USW in its Application for insurance; and

5.	Enter judgment declaring that Policy No. 09EFX00167, issued by Evanston to USW, is void *ab initio* based on material misrepresentations and/or omissions by USW in its Application for insurance;

6.	Enter judgment returning the parties to the *status quo ante*, namely, that Evanston return premium paid to it by USW, and that USW return $73,320.81 paid by Evanston on USW's behalf.

7.	For such other and further relief as the Court may deem just and proper.

This the 30th day of July 2010.

                        MCGUIREWOODS, LLP

                        __/s Robert A. Muckenfuss_____
                        Robert A. Muckenfuss
                        Federal Bar No. 07333
                        S.C. Bar No. 13903
                        Post Office Box 31247
                        Charlotte, North Carolina 28231
                        Telephone: (704) 343-2052
                        Fax: (704) 373-8935
                        rmuckenfuss@mcguirewoods.com

\12635713.7